UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ROXANNE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-CV-112 RLW |
| | ) |
| CORIZON LLC, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This prisoner civil rights matter pursuant to 42 U.S.C. § 1983 is before the Court on a Motion for Summary Judgment (ECF No. 23) filed by remaining Defendants Dr. Justin Jones, Dr. Tom Bredeman,[1] and Dr. Milton Hammerly, in their individual capacities (collectively, "Defendants").[2] Self-represented Plaintiff Roxanne Johnson ("Plaintiff") opposes the Motion and it is fully briefed. Because Defendants establish that no genuine disputes of fact remain and they are entitled to summary judgment as a matter of law, their Motion will be granted.

**Background**

Plaintiff is currently incarcerated at Chillicothe Correctional Center in Chillicothe, Missouri. At the time relevant to her Complaint, she was an inmate at the Women's Eastern Reception, Diagnostic and Correctional Center ("WERDCC") in Vandalia, Missouri. Plaintiff brings this action alleging the Defendants were deliberately indifferent to her serious medical need. Plaintiff's verified Complaint alleges she has a foot drop diagnosis that requires a

---

[1] This Defendant is sued as "Dr. Thomas Bredman." The Court uses Defendant's spelling of his name in this opinion.

[2] Plaintiff's claims against Defendants Corizon, LLC and Defendants Jones, Bredeman, and Hammerly in their official capacities were dismissed without prejudice by the Court under 28 U.S.C. § 1915(e). See Mem. and Order of April 8, 2019. (ECF No. 8.)

specially designed ankle and foot prosthetic brace.[3] As demonstrated by the brace, this is a medical need that has been previously diagnosed as requiring treatment. Plaintiff alleges that improper treatment of this condition has caused progressive worsening of symptoms such that she must now use a wheelchair. Plaintiff claims Dr. Jones, Dr. Bredeman, and Dr. Hammerly knew of this condition. Plaintiff alleges that upon her arrival at WERDCC Dr. Jones made the decision she would not be allowed access to her brace, which she needed to walk and without it had to use a wheelchair. (ECF No. 1 at 3.) Plaintiff alleges Dr. Bredeman and Dr. Hammerly refused to schedule her for an appointment with an outside prosthetic specialist so she could have a brace that had "officially been approved by the Missouri Department of Corrections." (Id. at 4.) Plaintiff alleges Dr. Bredeman and Dr. Hammerly referred her for two physical therapy sessions knowing these would not aid her condition and did it "only to appease [her] and delay [her] constant complaining." (Id.) Plaintiff also alleges that after a significant delay, Dr. Bredeman and Dr. Hammerly approved the modification of her confiscated prosthetic, but by the time she received the brace her "foot was too damaged and crippled to wear it." (Id.) Due to this delay and denial of treatment, Plaintiff alleges she can no longer walk and that there is a possibility the damage to her foot is irreparable.

**Legal Standard**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

---

[3]Foot drop refers to the inability to lift the front part of the foot. (Jones Decl. ¶ 7.) Foot drop such as that experienced by Plaintiff can result from nerve injuries sustained as a result of multiple lumbar spine surgeries. (Id.) Treatment for foot drop may include use of an ankle or foot brace to hold the foot in a normal position, physical therapy, or, in some cases, surgery. (Id.)

2

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation or conjecture." Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in her favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**Facts**

I.

As a threshold matter, Plaintiff failed to respond to the Defendants' Statement of Undisputed Material Facts ("SOF") (ECF No. 24). The SOF is supported by citations to the Defendants' Declarations and Plaintiff's institutional medical records, which were kept by WERDCC in the ordinary course of business. Plaintiff did not dispute Defendants' SOF in her

3

unverified Response to the Motion for Summary Judgment (ECF No. 28). Under this Court's Local Rule 4.01(E), where Plaintiff failed to submit a statement of material facts as to which she contends a genuine issue exists, she is deemed to have admitted all facts which were not specifically controverted. See Roe v. St. Louis Univ., 746 F.3d 874, 881 (8th Cir. 2014) (If the opposing party does not raise objections to a movant's statement of facts as required by Local Rule 4.01(E), "a district court will not abuse its discretion by admitting the movant's facts."). Plaintiff's "status as a pro se litigant [does] not excuse her from following the local rules." Bunch v. University of Ark. Bd. of Trustees, 863 F.3d 1062, 1067 (8th Cir. 2017).

That said, the Court treats Plaintiff's verified Complaint as the equivalent of an affidavit for summary judgment purposes, and accepts the facts set forth therein as true. See Williams v. York, 891 F.3d 701, 703 n.2 (8th Cir. 2018) (citations omitted). "Although a party may not generally rest on [her] pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." Roberson v. Hayti Police Dep't, 241 F.3d 992, 994-95 (8th Cir. 2001). Where the verified allegations of Plaintiff's Complaint conflict with the Defendants' SOF, the Court examines each fact individually to determine if a genuine dispute of fact exists.

II.

<u>The Parties</u>

Plaintiff was incarcerated by the Missouri Department of Corrections ("DOC") at the Women's Eastern Reception and Diagnostic Correctional Center ("WERDCC") at all times relevant to this lawsuit. Prior to Plaintiff's incarceration, she had been prescribed a metal ankle

4

and foot orthotic brace for issues with foot drop she had been having for the previous five years. (Johnson MR-0300).

Defendant Dr. Thomas Bredeman, D.O., is employed as an Associate Regional Medical Director for Corizon, LLC, in Missouri. (Bredeman Decl. ¶ 2 (ECF No. 24-1).) During the time relevant to Plaintiff's Complaint, Dr. Bredeman reviewed requests for non-formulary medications. (Id. ¶ 6.) Dr. Bredeman did not review requests for off-site specialist appointments. (Id.)

Defendant Dr. Justin Jones, M.D., is employed as the Medical Director for WERDCC. (Jones Decl. ¶ 2 (ECF No. 24-3).)[4]

Between July 2015 and August 2016, Defendant Dr. Milton Hammerly, M.D., was employed as one of three Regional Medical Directors for Corizon, LLC, in Missouri. (Hammerly Decl. ¶ 2 (ECF No. 24-4).)

<u>Plaintiff's Medical Treatment</u>[5]

Plaintiff entered WERDCC on approximately January 7, 2016. (Jones Decl. ¶ 12.) Plaintiff is a 51-year-old woman who reported a complicated medical history upon arriving at WERDCC including hypertension, hyperlipidemia, non-insulin dependent diabetes mellitus, chronic pain, foot drop, lower back pain, four lumbar spine surgeries, and a speech impediment. (Jones Decl. ¶ 6; Johnson MR-0034, 0056.) Plaintiff reported that she developed foot drop in her left foot as a result of her four lumbar spine surgeries. (Jones Decl. ¶ 6.) Plaintiff reported using

---

[4]Dr. Jones's Declaration cites to Plaintiff's institutional medical records. In the Facts section of this opinion the Court does not always include a reference to both Dr. Jones's Declaration and the portion of the medical record cited in his Declaration.

[5]Defendants submitted relevant portions of Plaintiff's medical records from the Missouri Department of Corrections as Exhibit A-1 (ECF No. 24-2) to their Statement of Uncontroverted Material Facts (ECF No. 24). Each page of the medical records is labeled at the bottom right with "Johnson MR-[page number]." The Court cites to these records by the relevant "Johnson MR-" page number.

5

a foot and ankle brace for several years but stated she had broken three of them and finally obtained a fitting for a custom brace for the foot drop at the end of 2015. (Johnson MR-0300.) Plaintiff received the brace on December 31, 2015, was arrested about a week later after only wearing the brace a short time, and "the DOC took the brace from her as property." (Id.)

Plaintiff' Complaint avers that upon her arrival at WERCC, Dr. Jones "made the decision not to allow me access to my personal prosthetic brace." (ECF No. 1 at 3.)

Dr. Jones states in his Declaration that he did not deny Plaintiff the use of her brace, and that Plaintiff's records reflect the correctional staff confiscated her left foot brace because it presented a security risk. (Jones Decl. ¶ 8.)

Plaintiff was seen at sick call by LPN Amber Thacher on January 11, 2016, with the chief complaint of "Need pain medication and foot/back brace." (Johnson MR-0034.) Nurse Thacher noted, "[Patient] states,

> I deal with foot drop, I have neuropathy from diabetes really bad, I have 3 toes that are dead on left foot, not a lot of feeling in left leg and foot the only thing that helps me walk is the brace from Hanger Prosthetics of Columbia. I have diabetic shoes and insoles and a brace that I can walk with they won't let me have here and they help me walk. They have me in a wheelchair taking my ability to walk away. I have a neurostimulator in [my] back.

(Johnson MR-0034.) Nurse Thacher was asked to prepare an accident report as Plaintiff stated that she flipped backwards out of her wheelchair when she was with a caseworker and trying to open a door with her foot. (Johnson MR-0035.)

Dr. Jones saw Plaintiff on January 20, 2016, for an evaluation of her blood pressure. (Jones Decl. ¶ 12.) The medical records reflect no complaints pertaining to her foot brace on January 20, 2016, and Dr. Jones does not recall any complaints pertaining to her foot brace. (Id.; Johnson MR-0054-0055.) If Plaintiff had made complaints regarding the confiscation of her left foot brace, Dr. Jones would have advised her to address the issue with correctional staff, as

6

medical providers do not have the authority to overrule the decisions of the correctional staff. (Jones Decl. ¶12.) If Plaintiff had expressed issues pertaining to treatment of her left foot drop, Dr. Jones would have advised her to raise her concerns at her scheduled entrance examination for her other chronic medical conditions or submit a request for health care so that her concerns could be addressed through the sick call process. (Id.)

Dr. Jones did not see Plaintiff between January 20, 2016, and November 9, 2016. (Id. ¶ 14.)

On January 21, 2016, Nurse Practitioner ("NP") Mary Miller saw Plaintiff for her entrance examination at WERDCC. (Jones Decl. ¶ 13.; Johnson MR-0056-0058.) NP Miller examined Plaintiff and noted her medical history of hypertension, hyperlipidemia, non-insulin-dependent diabetes mellitus, chronic pain, foot drop, lower back pain, multiple back surgeries, and a speech impediment. NP Miller noted Plaintiff has neurostimulator in her back but that it had been inactivated (Johnson MR-0056.) NP Miller noted Plaintiff's foot drop upon examination and enrolled Plaintiff in chronic care clinics. (Jones Decl. ¶ 13; Johnson MR-0058.)

Plaintiff was evaluated by other medical providers at WERDCC who prescribed medications such as Nortriptyline (an antidepressant that also treats nerve pain), Motrin (a nonsteroidal anti-inflammatory medication, or NSAID), Imitrex (a headache medicine that can also treat pain), Pain-Off (a combination of aspirin, an NSAID, acetaminophen, and caffeine) and topical capsaicin (which is used to relieve joint pain) for Plaintiff's complaints of chronic lumbar spine and foot pain. (Jones Decl. ¶¶ 15-17.)

On May 20, 2016, the correctional staff approved Plaintiff's brace. (Jones Decl. ¶ 18 (citing Johnson MR-0179).) A progress noted charted by Marilyn Hubert, RN, in Plaintiff's medical records on May 20, 2016, states in pertinent part, "Approval for personal brace for foot

7

drop. This was approved by the deputy warden and the acting major." (Johnson MR-0179.) Also noted is an order received from the provider: "may issue personal brace if approved by custody." (Id.)

On June 5, 2016, Plaintiff refused a follow-up doctor's appointment with Dr. Paul R. Jones, M.D., to evaluate her brace. (Jones Decl. ¶ 18.) The medical record states, "Patient refused with long statement. Patient was educated that she has an appointment for her brace and she did not have this on, patient was educated that it is necessary to wear brace for Dr. to see it and eval[uate]." (Johnson MR-0184.) On June 17, 2016, a nurse saw Plaintiff, who reported that the brace caused pain. (Jones Decl. ¶ 19.)

On June 25, 2016, Dr. Paul R. Jones saw Plaintiff for complaints that her left leg brace did not fit correctly and caused pain. (Id. ¶ 20.) Dr. Jones noted redness on the lateral aspect of Plaintiff's foot. He noted a plan to refer Plaintiff to an orthotics fitting. (Id.; Johnson MR-0195.)

On August 10, 2016, NP Miller saw Plaintiff for complaints of hot flashes and mood swings. (Jones Decl. ¶ 22.) NP Miller noted that Plaintiff was in no apparent distress but exhibited foot drop. She noted that Plaintiff was wheelchair bound, had a brace, and was awaiting a shoe. (Id.; Johnson MR-0229.)

On August 17, 2016,[6] NP Erma Johnmeyer saw Plaintiff for chronic care. (Jones Decl. ¶ 23.) NP Johnmeyer noted Plaintiff was in a wheelchair due to back pain and severe left foot drop. Plaintiff stated she wore a brace before coming to prison. NP Johnmeyer noted Plaintiff was medically stable. (Id.; Johnson MR-0243.)

On September 6, 2016, Dr. Paul Jones requested an orthopedic assessment of Plaintiff's brace complaints because the brace from Hanger Prosthetics was ill fitting, causing increased

---

[6] Dr. Jones's Declaration erroneously states that NP Johnmeyer's examination of Plaintiff occurred on August 17, 2017, as the medical records show the examination was on August 17, 2016. (Johnson MR-0242-0246.)

8

pain and sores, and Plaintiff was wheelchair bound because she was not able to wear the brace. (Jones Decl. ¶ 25; Johnson MR-0275.) Dr. John Deghetto, an Associate Regional Medical Director at the time, approved the request. (Jones Decl. ¶ 25; Bredeman Decl. ¶ 7; Johnson MR-0277.)

Neither Dr. Hammerly nor Dr. Bredeman conducted the utilization reviews for Dr. Paul Jones's request for an orthopedic assessment of Plaintiff's complaints of an ill-fitting left leg brace. (Bredeman Decl. ¶ 7; Hammerly Decl. ¶ 6.) Dr. Hammerly was no longer employed by Corizon, LLC at the time of Dr. Jones's request. (Hammerly Decl. ¶ 6.)

On September 8, 2016, NP Johnmeyer saw Plaintiff for a request for muscle rub. (Jones Decl. ¶ 26.) NP Johnmeyer noted no significant abnormalities upon examination and renewed Plaintiff's muscle rub prescription and lay-in for a wheelchair. (Id.) NP Johnmeyer also prescribed Fiorinal, a medication for tension headaches that contains aspirin, which can treat pain. (Id.; Johnson MR-0279-0280.)

On September 26, 2016, NP Vanessa Fitts saw Plaintiff, who claimed that the "DOC took [the] brace from her as property, she says she had to fight six months to get her new brace back," and that its use caused her pain. (Id. ¶ 27; Johnson MR-0300.) NP Fitts noted she would follow up on Plaintiff's orthotic referral and provided Plaintiff with isometric exercises to perform in her wheelchair. (Jones Decl. ¶ 27.)

On October 12, 2016, Plaintiff refused an off-site orthotic evaluation for her leg brace. (Id. ¶ 28.) Plaintiff stated that the "DOC took her braces away" ten months previously and her left foot had "gotten very crippled up" in that period and she could no longer wear the brace she came in with. (Johnson MR-0307.) Plaintiff complained that the security staff wanted to take

9

her to the appointment in full restraints knowing she could not walk. Plaintiff stated that she "[felt] DOC ha[d] crippled [her] enough." (Id.)

On October 24, 2016, NP Fitts saw Plaintiff in chronic care for her left foot drop and chronic back issues. (Jones Decl. ¶ 29.) NP Fitts noted that Plaintiff had refused to be seen by Hanger Orthopedics because she refused to be cuffed at her feet. NP Fitts noted she would request to reschedule the Hanger Orthopedics evaluation. (Id.)

On November 3, 2016, Plaintiff was evaluated for a brace by Hanger Prosthetics. (Id. ¶ 30.) Hanger Prosthetics recommended a heel wedge left shoe with a lift and physical therapy. (Id.) On November 8, 2016, Dr. Justin Jones requested physical therapy for Plaintiff as recommended by Hanger Prosthetics. (Id. ¶ 31.)

Defendants Dr. Bredeman and Dr. Hammerly were not involved in reviewing Dr. Justin Jones's request for physical therapy. (Bredeman Decl. ¶ 8; Hammerly Decl. ¶ 7.) The request was approved by Dr. Jerry Lovelace, the Regional Medical Director. (Bredeman Decl. ¶ 8.)

On November 9, 2016, Dr. Justin Jones saw Plaintiff in follow-up to her Hanger Prosthetics appointment. (Jones Decl. ¶ 31.) Plaintiff stated that she did not wear her brace because it caused pain to the toes and lateral edge of the left foot. Dr. Jones noted upon examination that Plaintiff had a significant plantar flexion contracture. (Id.) In other words, Plaintiff's foot was pointing downward at twenty (20) degrees and she could not point her foot up on her own. Dr. Jones noted Plaintiff's brace fit well but that she needed heel lifts. (Id.) He also noted Plaintiff needed physical therapy for her left foot contracture. Plaintiff expressed no pain complaints at that time. Dr. Jones assessed Plaintiff with chronic left foot drop and noted that a heel lift had been ordered by Hanger and that Plaintiff would have a follow-up visit. (Id.)

At this time, Plaintiff had prescriptions for Topamax (a medication that can treat migraine headaches and chronic pain), Excedrin Migraine (a medication that contains both acetaminophen and aspirin), topical capsaicin, ibuprofen, and Nortriptyline for her complaints of pain. (Id. ¶ 31.)

Plaintiff underwent physical therapy on November 26, 2016, and December 11, 2016. (Id. ¶ 32.) Dr. Justin Jones saw Plaintiff in follow-up on December 15, 2016. (Id. ¶ 32.) Plaintiff stated she believed her foot drop was better and that the physical therapist told her she would always have some deformity. Plaintiff requested Neurontin for her left foot.[7] She reported that two toes on her left foot were broken in August by other inmates. (Id.) Plaintiff did not appear to be in distress. She appeared to be somewhat touchy to mild palpation of the foot but was distracted easily when she was talked to. (Id.) Further, Plaintiff's vital signs were normal (pain can raise blood pressure). Therefore, Dr. Jones determined no change in medication was clinically necessary at that time. (Id.)

While Plaintiff requested Neurontin, this medication is highly regulated in the correctional setting. (Id. ¶ 33.) Neurontin is a non-narcotic, antiseizure medication that is used for the management of chronic neuralgia. Currently, the FDA has approved Neurontin for the management of postherpetic neuralgia–nerve pain arising from shingles–and for seizures. Through clinical use, medical providers found that Neurontin also appeared to have a positive effect on other types of neuralgia. Neurontin can cause individuals to experience euphoria, improved sociability, a marijuana-like high, relaxation, and a sense of calm. As a result, it is a

---

[7]Neurontin is a brand names for the generic medication Gabapentin. See WebMD.com, https://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details (last visited July 8, 2020).

prevalent drug of abuse in the prison system. (Id.)[8] Based on Plaintiff's clinical presentation, Dr. Jones did not believe that Neurontin was medically indicated. (Id.) Further, as stated above, Plaintiff had multiple medications to treat her complaints of both musculoskeletal and nerve pain, including ibuprofen, Nortriptyline, Excedrin Migraine, topical capsaicin cream, and Topamax. (Id.)

Plaintiff had an off-site visit with Hanger Prosthetics on December 23, 2016. (Id. ¶ 34.) She received her brace with a heel wedge and compensatory lift. The Hanger Prosthetics provider noted that he provided a 3/8 inch removable heel lift and that Plaintiff would need to remove 1/8 inch of the lift at a time as her Achilles heel started to stretch out. The provider noted that Plaintiff would eventually stretch enough to lower the sole wedge. (Id.)

On December 29, 2016, Dr. Justin Jones saw Plaintiff in follow-up to her visit with Hanger Prosthetics. (Id. ¶ 35.) Plaintiff stated that she was doing exercises with her foot but then she immediately changed the topic and requested to switch medications for her gastroesophageal reflux disease. (Id.) She ignored Dr. Jones's attempt to direct the appointment to address her foot issue and instead threatened to call her lawyer. (Id.; Johnson MR-0372.) Plaintiff stated she had many problems which she believed had not been addressed. Dr. Jones advised her as to how to seek care for those issues and informed her that the appointment was to follow up on her Hanger Prosthetics appointment. (Jones Decl. ¶ 35.) After Dr. Jones again attempted to redirect Plaintiff, she ignored him and stated that the appointment was a "wasted visit." Dr. Jones noted that Plaintiff was in no apparent distress, acted like she felt well, and wheeled into the room easily. However, he noted she was not cooperative and did not want to cooperate with the purpose of the visit. (Id.) Dr. Jones noted that Plaintiff was to wean into

---

[8] Dr. Jones refers to both the generic and brand names for the medication in Paragraph 33 of his Declaration.

wearing her brace as recommended by Hanger Prosthetics and her physical therapist. Dr. Jones explained to Plaintiff that the brace would be uncomfortable initially but that her condition would improve with continued use. Dr. Jones ordered a follow-up appointment in one month. (Id.)

Dr. Jones is not aware of any issues Plaintiff had with her brace because she refused to discuss her brace at length with him. (Id. ¶ 36.) If Plaintiff had expressed any concerns regarding her brace, Dr. Jones could have ordered a follow-up with Hanger Prosthetics or her physical therapist. (Id.)

On January 18, 2017, Dr. Justin Jones attempted to see Plaintiff in follow-up to her foot drop complaints, but she refused the appointment stating, "Dr. Jones and I do not get along and he does nothing to better my situation. I can't wear my brace DOC has let my foot get too crippled up to use. I can't walk." (Id. ¶ 38; Johnson MR-0404.) Dr. Jones did not see Plaintiff after this date. (Jones Decl. ¶ 38.)

Plaintiff was transferred to another facility on or about February 21, 2017. (Id. ¶ 39.) Plaintiff's records do not reflect that she raised complaints regarding the fit or use of her ankle and foot orthotic brace to the medical staff between January 18, 2017, and February 21, 2017. (Id.; Johnson MR-0404-0430.)

Plaintiff's medical records reflect that she continued to receive regular assessments and treatment for her chronic complaints of foot drop and back pain, including chronic care evaluations, medications such as Topamax, Duloxetine (a nerve pain medication), Ibuprofen, Tylenol, analgesic balm, Sumatriptan (a medication that treats migraine headaches and pain), and Robaxin (a muscle relaxant), and accommodations, including shower shoes, a lower bunk, a

13

wheelchair, and a wheelchair cushion. (Id. ¶ 40.) Plaintiff also had access to medical care for emerging complaints, including those related to her lumbar spine and foot drop conditions. (Id.)

Plaintiff's medical records document numerous statements by Plaintiff to medical providers that her ankle and foot brace was taken from her, but none reflect that Plaintiff stated Dr. Jones ordered it taken from her. See Johnson MR-0300, 0307, 0692, 0730, 1117, 1468; 1968 ("[Plaintiff] gives a rather convoluted history of coming into incarceration with a metal custom AFO type brace,[9] the brace being taken from her due to metal.")

Multiple notations in Plaintiff's medical records made by various providers indicate that whether Plaintiff could have the brace or not was a determination under the jurisdiction of the WERDCC administration, not the medical providers. See, e.g., Johnson MR-0179 ("Approval for personal brace for foot drop. This was approved by the deputy warden and the acting major"; "may issue personal brace if approved by custody."); Johnson MR-0771 ("provider clarified that decision to approve of AFO [brace] is made by WARDEN, not med[ical] or property"); Johnson MR-0780 (Plaintiff's "brace will need to be approved by D.O.C./discuss with administration"); Johnson MR-0896 ("There are 2 metal leg braces that are attached to shoes, 1 with a lift. These were being held for approval of use by the warden. Warden approved use and will be issued to [Plaintiff] today."); Johnson MR-1968 (after "[s]everal months of appeals/request on [Plaintiff's] part the Warden then letting [sic] her have the brace[.]"

**Discussion**

The plaintiff in a Section 1983 action must show that a defendant deprived her of a constitutional right while acting under color of state law. Roudybush v. Zabel, 813 F.2d 173, 176 (8th Cir. 1987) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 (1970)). "A defendant will not be held liable under 42 U.S.C. § 1983 unless he was personally involved in

---

[9] "AFO" is an abbreviation for ankle and foot orthotic. (Jones Decl. ¶ 9.)

14

causing the deprivation of a constitutional right." Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir. 1978). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." Smith v. City of Minneapolis, 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks and quoted case omitted).

A prisoner's Eighth Amendment rights are violated if prison officials exhibit deliberate indifference to the prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825 (1994). A claim of deliberate indifference involves both an objective and subjective standard. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The defendant's conduct must objectively rise to the level of a constitutional violation, id., by depriving the plaintiff of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834.

Under the subjective standard, an official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838. Thus, the Supreme Court has likened deliberate indifference to a criminal recklessness standard. Id. at 839; Allard v. Baldwin, 779 F.3d 768, 771-72 (8th Cir. 2015). "This onerous standard requires a showing 'more than negligence, more even than gross negligence,' Popoalii v. Correctional

Medical Services, 512 F.3d 488, 499 (8th Cir. 2008), but less than 'purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate,' Schaub v. VonWald, 638 F.3d 905, 914-15 (8th Cir. 2011)." Thompson v. King, 730 F.3d 742, 747 (8th Cir. 2013).

Medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence do not amount to constitutional violations. Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997). "[T]he question whether ... additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. "Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference." Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990)).

The Eight Circuit has held that when an inmate alleges that a delay in treatment is the constitutional deprivation, the "objective seriousness of the deprivation" is measured "by reference to the *effect* of delay in treatment." Jackson v. Riebold, 815 F.3d 1114, 1119 (8th Cir. 2016) (quoted case omitted). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis.'" Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted). An inmate has the burden of proof to show causation between the alleged acts and the alleged damage. Robinson v. Hager, 292 F.3d 560 (8th Cir. 2000).

A. Plaintiff's Claims against Defendants Drs. Hammerly and Bredeman

The Court addresses Plaintiff's claims against Dr. Hammerly and Dr. Bredeman together because her allegations against them are identical. Plaintiff alleges that Dr. Hammerly and Dr. Bredeman denied her an appointment with an outside prosthetic specialist (ECF No. 1 at 3), and instead approved physical therapy for her foot drop knowing it would not help her condition and

in an attempt to "appease [her] and delay [her] constant complaining." (Id. at 4.) Plaintiff claims these Defendants later approved modification of her ankle and foot brace, but by that time her "foot was too damaged and crippled to wear it." (Id.).

Plaintiff's institutional medical records do not offer any support for her claims against Dr. Hammerly and Dr. Bredeman. As to an outside referral, the records first show that Dr. Paul R. Jones considered referring Plaintiff to an outside orthotics specialist in late June 2016 (Johnson MR-0195), requested an outside evaluation of Plaintiff's brace complaints on September 6, 2016, and the request was approved by Dr. John Deghetto (Johnson MR-0277-0277). There is no indication in the medical records or other supporting evidence that Plaintiff made a request for an orthotics evaluation that was deferred or denied by any medical provider. The medical records do show that Plaintiff refused her first orthotic evaluation. (Johnson MR-0307.) The medical records also show that Dr. Justin Jones requested physical therapy for Plaintiff on November 8, 2016, and the request was approved by Dr. Lovelace.

There is no evidence in the medical records of Dr. Hammerly or Dr. Bredeman's involvement in reviewing either any request for an outside orthotic evaluation or for physical therapy for Plaintiff. It is undisputed Dr. Hammerly was no longer employed by Corizon, LLC, at the time of these occurrences. It is also undisputed Dr. Bredeman did not review requests for off-site specialist appointments during the time period relevant to Plaintiff's Complaint. Plaintiff may not hold Dr. Hammerly and Dr. Bredeman liable for the perceived acts or omissions of other individuals. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (holding that officials can only be liable under § 1983 for their own conduct); Smith, 754 F.3d at 547 (same)

Plaintiff's allegations in her verified Complaint, which are not supported by any independent documentary evidence, are contrary to the record evidence: WERDCC institutional

17

medical records kept in the ordinary course of business, and the Declarations of Dr. Hammerly and Dr. Bredeman, which are consistent with the institutional records. On summary judgment, Plaintiff "may not rely on allegations or denials," but rather "must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor on more than mere speculation or conjecture." Carter, 956 F.3d at 1059 (quoting Ball, 870 F.3d at 727). The allegations of Plaintiff's verified Complaint, unsupported by any other evidence, are insufficient probative evidence to raise a genuine dispute of fact on summary judgment, or to permit a finding in her favor. See Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.") (quoted cases omitted).

Defendants Dr. Hammerly and Dr. Bredeman have established they are entitled to summary judgment on Plaintiff's claims against them.

B. Plaintiff's Claim Against Dr. Justin Jones

The sole allegation in Plaintiff's verified Complaint against Dr. Justin Jones is that upon her arrival at WERDCC, he "made the decision not to allow [her] access to her personal prosthetic brace." (ECF No. 1 at 3.) There is no independent documentary evidence to support Plaintiff's allegation. Contrary to Plaintiff's allegation, the record evidence is that Dr. Jones did not deny Plaintiff access to her ankle and foot brace, but rather the metal brace was confiscated by the correctional staff for security reasons. The record evidence is also that Dr. Jones—and other medical providers—did not have authority to overrule the decisions of the correctional staff or prison administration with respect to Plaintiff's ability to have the brace. As stated above, Plaintiff cannot hold Dr. Jones liable for the acts or omissions of other individuals under § 1983,

18

Iqbal, 556 U.S. at 676, as it "does not sanction tort by association." Smith, 754 F.3d at 547. In the absence of any supporting evidence, the allegation against Dr. Jones in Plaintiff's verified Complaint is insufficient probative evidence to raise a genuine dispute of fact on summary judgment, or to permit a finding in her favor. See Carter, 956 F.3d at 1059.

Further, the record is devoid of evidence that Dr. Jones was aware of Plaintiff's complaint that her brace had been confiscated, before it was returned to her on May 20, 2016. Specifically, although Dr. Jones saw Plaintiff on January 20, 2016, the medical record does not reflect that she made any mention of or complaint regarding the confiscation of her brace on that date. Dr. Jones did not see Plaintiff again until November 9, 2016, almost six months after Plaintiff's brace had been returned to her. The law is well settled that deliberate indifference requires a subjective awareness of a risk of serious harm. See Farmer, 511 U.S. at 844. The record demonstrates that Dr. Jones was not subjectively aware of Plaintiff's brace concerns and, therefore, of a risk of harm to Plaintiff. Because there is no evidence that Dr. Jones ignored any risk of harm of which he was subjectively aware, he is entitled to summary judgment. See id.

**Conclusion**

For the reasons discussed above, the Court finds that the Defendants have established there are no genuine issues of material fact in dispute and they are entitled to summary judgment on Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Jones, Bredeman, and Hammerly's Motion for Summary Judgment is **GRANTED**. [ECF No. 23]

An appropriate Judgment will accompany this Memorandum and Order.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 9th day of July, 2020.